## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **DOROTHY L. HOPKINS,** | ) | **CASE NO. 8:11CV365** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **COUNTY OF DOUGLAS,** | ) | |
| **NEBRASKA, a political** | ) | |
| **subdivision of the State of Nebraska,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 30). For the reasons discussed below, the Motion will be granted.

### PROCEDURAL HISTORY

Plaintiff Dorothy L. Hopkins ("Hopkins") brought this action against County of Douglas, Nebraska (the "County"), alleging that she was subjected to discrimination based on her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. § 48-1001 *et seq.* ("NADEA"); and that she was the victim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 *et seq.* ("FEPA"). (Amended Complaint, Filing No. 5.)

More specifically, Hopkins alleges that the County denied her a promotion to the position of Administrative Sergeant in March 2009, and instead filled the position with a 29-year-old applicant. (*Id.* at ¶ 14.) After Hopkins filed a charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Nebraska Equal Opportunity Commission ("NEOC"), the County allegedly retaliated against her in

four respects: (1) not scheduling her for work as an alternate Administrative Sergeant, (2) not paying her overtime wages, (3) entertaining false allegations that she engaged in misconduct, and (4) eliminating her status as an alternate Administrative Sergeant, all leading to her decision to take early retirement.  (*Id*. at ¶¶ 16-17.)

The parties' briefs (Filing Nos. 31, 33, 35) and indexes of evidence (Filing Nos. 32, 34) provide the Court with a plethora of information, all of which has been considered, but much of which is unnecessary to recite or discuss for the purpose of resolving the pending motion.  The Court will summarize those undisputed facts leading the Court to conclude that summary judgment should be entered in the County's favor.

## SUMMARY OF MATERIAL FACTS

The County operates the Douglas County Correctional Center ("DCCC") through the Douglas County Department of Corrections ("DCDC").  Hopkins was employed by DCDC from 1989 to July 30, 2010, and she held the position of Sergeant from April 3, 2001, until her retirement on July 30, 2010.  At all times relevant to this action, Jeffery Newton ("Newton") was the Director of DCDC and had final authority for DCDC policies, procedures, and employment decisions.

In 2004, DCCC created a temporary specialty assignment called Administrative Sergeant. The Administrative Sergeant position was created due to an expansion of DCCC's jail facilities, and persons holding the Administrative Sergeant position were expected to relieve the Watch Commander and Lieutenants of some of their administrative duties, including drafting schedules, taking phone messages, and making schedule changes to accommodate employee leave requests.  Administrative Sergeants did not have authority to grant employees paid time off, and most of their tasks required approval

of the Watch Commander.  Assignment to an Administrative Sergeant position resulted in no increase in a Sergeant's salary, benefits, or seniority.

During all times relevant to this action, DCCC A-Shift Administrative Sergeants supervised two to three officers, while A-Shift Housing Unit Sergeants supervised up to ten officers. Administrative Sergeant duties involved the processing of paperwork and performance of other administrative tasks, while the duties of Housing Unit Sergeants required more direct hands-on supervision of employees, overseeing of inmate and staff security, and ensuring that care was provided to inmates.

On January 22, 2009, Newton issued a written order authorizing DCDC to advertise for several temporary specialty assignments including an Administrative Sergeant assignment.  The only advertised requirement for an employee's assignment to the Administrative Sergeant position was the rank of Sergeant.  The advertisement stated that the highest scored candidate would serve as the primary person assigned to the position, and all other applicants would serve as alternates to back fill the position when the primary person was away on leave, or if the position was vacated.

In March 2009, two DCDC Lieutenants and a DCDC Captain served on the interview panel for the A-Shift Administrative Sergeant assignment.  As a panel, they interviewed four applicants: Sergeants David Aldrich (age 41), Dorothy Hopkins (age 64[1]), Walter Nurton (age 56), and William Stenneche (age 32).  The Captain drafted questions used to interview applicants, after seeking input from the Lieutenants, and the questions did not indicate any age bias.  Hopkins admits there was nothing about the interview process itself that was unfair or discriminatory. (Filing No. 33 at 13.)

---

[1]  There is inconsistency in the record regarding the Plaintiff's age, but it is undisputed that she was in her early sixties.

At the conclusion of all the interviews for temporary specialty assignments, one of the panel members collected score sheets and prepared a master spread sheet with the results.  With respect to the assignment of A-Shift Administrative Sergeant, Sergeant Stenneche had the highest total interview score followed by Sergeant Nurton, and a tie between Sergeants Aldrich and Hopkins.

On April 16, 2009, Newton issued an order appointing the successful applicants for the temporary specialty assignment of Administrative Sergeant for all three shifts. Relevant to this action, he appointed Sgt. William Stenneche as the A-Shift Administrative Sergeant. It was DCDC's general practice to have Alternate Administrative Sergeants fill in during an Administrative Sergeant's absence in a hierarchy based on their unsuccessful interview scores. In practice, the person that scored the second highest points was eligible to serve before the person with the third highest points, and so forth.

Hopkins filed her first complaint with the NEOC in December 2009 alleging discrimination, including age discrimination, regarding the March/April 2009 Administrative Sergeant selection and assignment process. DCDC was first notified of this filing in late December 2009.  The County responded to the charge of discrimination on February 4, 2010.

 In January 2010, a DCDC Lieutenant, in consultation with a DCDC Captain, changed the Administrative Sergeant rotation schedule and began scheduling Sergeant Aldrich as the primary Alternate Administrative Sergeant for the A-shift, in Sergeant Stenneche's absence.  As part of that change, Hopkins was eligible to serve as Administrative Sergeant, but only when Sergeants Stenneche and Aldrich both were not on duty.  Hopkins served as Administrative Sergeant nineteen times between January 17

and June 29, 2010.  When this change in the rotation schedule was made, neither the Lieutenant nor the Captain involved in making the change was aware that Hopkins filed a claim of discrimination with the NEOC.

On April 23, 2010, Hopkins voluntarily applied for and was awarded overtime.  When she applied for the overtime, she designated a preference to work in a then-available Administrative Sergeant position.  Pursuant to a governing Union Contract, an employee could designate a preference of location to work overtime, and management would try to accommodate that request; however, management retained the ability to schedule personnel according to the needs of the DCDC and an employee's requested designation was not guaranteed.  When Hopkins arrived for duty, she found the Administrative Sergeant post was filled by Sergeant Stenneche who had cancelled his leave.  Hopkins was paged over the DCDC intercom system and she heard the page before she left the building, but did not respond.  Instead, she went home.  DCDC considered her action to be insubordinate and in violation of DCDC Policies and Procedures, that required personnel reporting for overtime to remain available for assignment until excused.  On or about April 24, 2010, Hopkins submitted a request for payment for two hours of overtime for April 23, 2010.  A DCDC Lieutenant denied payment, because Hopkins left DCCC without working on April 23, 2010, although her overtime had not been cancelled.

Hopkins filed her second complaint with the NEOC in June 2010, alleging that the County retaliated against her by not scheduling her for regular hours as an Alternate Administrative Sergeant after January 17, 2010, and by denying her two hours of overtime pay in April 2010.  DCDC was first notified of this filing in late June 2010.

Hopkins received documented counseling on June 29, 2010, for allegedly canceling

her overtime with less than two hours notice on April 23, 2010, though she contends she thought she could go home when the Administrative Sergeant assignment was not available.  She also received documented counseling for alleged misuse of sick leave on March 20, 2008, March 17, 2009, October 7, 2009, and February 2, 2010, though she denies having misused sick leave.  She received documented counseling on November 24, 2009, for allegedly awarding overtime inappropriately while acting as Administrative Sergeant, though she denies having awarded overtime inappropriately.  She received documented counseling on February 2, 2010, for allegedly moving officers to unassigned duty posts without authorization on October 19, 2009, and December 7, 2009, though she denies having moved officers to unassigned duty posts.

On June 29, 2010, a DCDC Captain notified Newton of allegations that Hopkins manipulated the A-Shift schedule without authorization while serving as Administrative Sergeant.  Hopkins admitted that in June 2010 she used her position as an Alternate Administrative Sergeant to make significant scheduling changes, but denied that permission was required for such changes.  At the same time, Newton also learned of more allegations of misconduct against Hopkins. First, on June 22, 2010, while speaking of her impending retirement, Hopkins allegedly stated to a DCDC Sergeant that when she left she planned to take people with her. Second, on June 22, 2010, Hopkins allegedly violated DCDC policy during two planned use-of-force situations, putting subordinate officers at risk of harm. Hopkins denied those two allegations.  Newton assigned the Office of Professional Responsibility to investigate all the allegations, and Hopkins was notified that she was temporarily removed as Alternate Administrative Sergeant pending the investigation.

The investigation into Hopkins's alleged misconduct was never completed, because in early July 2010 Newton learned of Hopkins's intent to retire from her employment with DCDC on July 30, 2010.  Newton ordered the investigation closed pending Hopkins's retirement.  Hopkins was never disciplined, counseled or subjected to any other adverse action based on the allegations, and she retired on July 30, 2010.

Hopkins amended the charge of retaliation in September 2010 to allege that DCDC retaliated against her by initiating an investigation into her alleged unauthorized schedule changes, by temporarily removing her from eligibility to serve as an Alternate Administrative Sergeant, and by forcing her to retire.  DCDC was first notified of that filing in late September of 2010.  The NEOC and EEOC issued noticed to Hopkins on or about July 26, 2011, and August 11, 2011, entitling her to commence her actions within ninety days of receipt of the notices, and she timely filed this action on October 27, 2011.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)).  The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor."  *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir 2011).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need

not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (quoting *Matsushita*, 475 U.S. at 586-87)), *cert. denied,* 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

## I.  The County's Failure to Assign Hopkins to the Administrative Sergeant Position Was Not an Adverse Employment Action

Because Hopkins presented no direct evidence[2] of age discrimination, her claims under the ADEA and NADEA are considered under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> The ADEA makes it "unlawful for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The *McDonnell Douglas* framework applies. *Rahlf v. Mo–Tech Corp*., 642 F.3d 633, 637 (8th Cir. 2011). In order to establish a *prima facie* case under the ADEA, [a plaintiff] must show: (1) he is over 40; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) substantially younger, similarly-situated employees were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir.2010).

*Onyiah v. St. Cloud State University*, 684 F.3d 711, 719 (8th Cir. 2012).

If a plaintiff establishes a *prima facie* case of age discrimination, the burden of production shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for its action.  *Id.* (quoting *Rahlf v. Mo–Tech Corp*., 642 F.3d 633, 637 (8th Cir. 2011)).  If the defendant does so, the plaintiff must show that the proffered reason was pretext for discrimination.  At all times, the plaintiff bears the ultimate burden of persuasion that "age was the 'but-for' cause" of the adverse employment action.  *Id*. (citing *Rahlf*, 642 F.3d at 637, and *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 176 (2009)).

---

2

  "Direct evidence in this context is not the converse of circumstantial evidence ... [but] is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir.2011) (*en banc*).

"Nebraska's age discrimination law is interpreted in conformity with the ADEA." *Schultz v. Windstream Communications, Inc*., 600 F.3d 948, 953 n.2 (8th Cir. 2010) (citing *Humphrey v. Neb. Pub. Power Dist*., 243 Neb. 872, 503 N.W.2d 211, 217 (1993)).

Here, Hopkins has shown that she was over forty years of age; she was qualified for the position of Administrative Sergeant; and a substantially younger and similarly situated employee was selected for that position.  But she has not shown that she suffered an adverse employment action.

An adverse employment action is "a term used throughout Title VII jurisprudence to denote a significant injury or harm."  *Lisdahl v. Mayo Foundation*, 633 F.3d 712, 720 (2011) (citing *Clegg v. Ark. Dep't of Correction*, 496 F.3d 922, 926 (8th Cir.2007) (defining "adverse employment action" as a "tangible change in working conditions that produces a material employment disadvantage" such as termination, cuts in pay or benefits, or changes that affect an employee's future career prospects, but not "minor changes in duties or working conditions, even unpalatable or unwelcome ones")).

When the County selected another employee to serve in the position of A-Shift Administrative Sergeant in April 2009, Hopkins did not lose any pay or benefits, and she has not presented plausible evidence that the County's action was likely to affect her future career prospects.  Accordingly, she has failed to present a *prima facie* case of age discrimination in violation of the ADEA or NADEA.

## II.   Hopkins Did Not Suffer any Materially Adverse Action that would Deter a Reasonable Employee from Making a Charge of Employment Discrimination

Because Hopkins presented no direct evidence of retaliation, her retaliation claims also are analyzed under the *McDonnell Douglas* burden-shifting analysis discussed above.

To establish a *prima facie* case of retaliation under Title VII[3], a she must demonstrate (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. *Gilbert v. Des Moines Area Community College*, 495 F.3d 906, 917 (8th Cir. 2007).

> The anti–retaliation provision of Title VII protects individuals "from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White (White)*, 548 U.S. 53, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006). The standard is an objective one, requiring the plaintiff to demonstrate "a reasonable employee would have found the challenged action materially adverse," and the employer's action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation marks omitted).

*Gilbert,* 495 F.3d at 917.

The County does not dispute that Hopkins engaged in protected activity when she filed her NEOC charges, but does dispute that she suffered any adverse employment action, or that there was a causal connection between her protected activity and any of the County's actions of which she complains.

Actionable retaliation must be "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 62-68 (2006) (noting that Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm," and that an employee's decision to report discrimination "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and

---

[3]

NFEPA prohibits employers from retaliating against employees for "oppos[ing] any practice or refus[ing] to carry out any action unlawful under federal law or the laws of this state." Neb.Rev.Stat. § 48–1114(3). "In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII[.]" *Orr v. Wal-Mart Stores, Inc.,* 297 F.3d 720, 723 (8th Cir. 2002), citing *Father Flanagan's Boys' Home v. Agnew*, 590 N.W.2d 688, 693 (Neb. 1999); *IBP, Inc. v. Sands*, 563 N.W.2d 353, 357-59 (Neb. 1997).

that all employees experience").

Here, Hopkins complains that (1) in January 2010, her opportunities to serve as the Alternate Administrative Sergeant were more limited than they had previously been, though she still served in that post from time to time; (2) she did not receive two hours of overtime pay for appearing for work on April 23, 2010, when the Administrative Sergeant cancelled his vacation leave; (3) Newton denied her the opportunity to serve as an Alternate Administrative Sergeant beginning July 29, 2010, pending investigation of allegations that she violated certain DCDC policies; and (4) Newton never returned her to an Alternate Administrative Sergeant position.  Hopkins contends that the County's alleged acts of retaliation led to her constructive discharge.

> To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to force her to quit. An employee must, however, grant her employer a reasonable opportunity to correct the intolerable condition before she terminates her employment.

*Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir.2008) (quotations, alterations, and internal citations omitted).

Here, the County did not subject Hopkins to materially adverse actions causing injury or harm such that the actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  No reasonable person in Hopkins situation would find her working conditions intolerable, and no reasonable jury could conclude otherwise.

Further, the uncontroverted evidence shows that Hopkins had many formal channels within DCDC through which she could voice her grievances and seek redress, and she chose to use none of them.  The uncontorverted evidence also shows that Hopkins

voluntarily took retirement effective July 30, 2010, because she wanted to retire.

The Eighth Circuit Court of Appeals repeatedly has noted that "the employment–discrimination laws have not vested in the federal courts the authority to sit as super–personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995). Here, Hopkins has not met the burden of demonstrating a prima facie case of age discrimination or retaliation, and the Court will not act as a super-personnel department to review the wisdom or fairness of the management decisions made by the County.

Accordingly,

IT IS ORDERED:

1.    The Motion for Summary Judgment (Filing No. 30) submitted by Defendant County of Douglas, Nebraska, is granted;

2.    All pending motions are denied as moot;

3.    Plaintiff's Complaint is dismissed, with prejudice; and

4.    A separate Judgment will be entered.


DATED this 13th day of March, 2013.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge